| | |
|---|---|
| From: | Cameron Strang <cstrang@relevantmediagroup.com> |
| Sent: | Thursday, March 21, 2024 6:12 PM |
| To: | CHAMBERS FLMD KIDD |
| Cc: | |
| Subject: | Re: Case No. 6:23-cv-1192-WWB-EJK, Relevant Media Group, Inc. |

Cameron Strang
3720 Lake Sarah Dr
Orlando, FL 32804


Honorable Emery J. Kidd
Magistrate Judge
United States District Court
Middle District of Florida
Orlando Division

Re: Case No. 6:23-cv-1192-WWB-EJK, Relevant Media Group, Inc.


Dear Judge Kidd:

My name is Cameron Strang, and I am the CEO and founder of Relevant Media Group. I am writing in response to the motion response that I received via FedEx on March 8, 2023. It stated that I have 14 days after receipt to file a written objection or response, and that is the purpose of this letter.

I believe that the judgment would benefit from additional information, considering I was not able to share important details until now.

As the lawsuit claims, the plaintiff's photograph did appear on our website from 2017-2023. We were unaware of that fact, but immediately upon being contacted by the plaintiff about the photograph in 2023, we looked into it, found the image on our server and removed it.

We have been publishing daily articles on our website, www.relevantmagazine.com, since March, 2002. We have over 20,000 articles covering faith, culture and life topics for Christian college students and twentysomethings.

We found the copyright claim for this image unusual because we do not cover real estate. While we did find the image on our site, its usage was very peculiar and in line with other instances we found of content being posted due to a data breach or hack.

The article on which this image appeared, as seen in the screen shots in the lawsuit, has a publish date of 2012. You'll see that the article itself is only three lines long and ends with "…", implying the

content was cut off. This is not a format we've ever used for our articles. Our posts are typically 500-2,000 words long, not three lines.

In the article, there is a hyperlink referencing an article on realtor.com. That realtor.com article's publish date is 2015. How could an article appear on our website published in 2012, if it was based on, and linking to, an article that didn't exist until 2015?

That led us to look into whether or not it was posted on our site as part of a security breach, which we've had happen a few times over our two decades of publishing.

In 2017, and again in 2019 and 2021, our website was hacked and content was posted without our knowledge. While I cannot prove that this was posted as part of the 2017 hack, the dates do line up. According to the lawsuit, the image didn't appear on our site until 2017. (But again, the article showed a 2012 publish date.)

Back-dating fraudulent posts was a common tactic in all of the content that appeared on our website as part of a hack. The content would be back-dated so as not to appear on our home page, which automatically shows the newest articles. Having the fraudulent articles appear on our home page would have immediately alerted us to the hack. So, to bury the content and keep it hidden, the posts were back-dated to be buried deep on our site. The hackers usually embedded malware or pornography in the content.

If the image was indeed posted in 2017, logically it makes sense that they would have hidden it by back-dating it to appear like it was published in 2012.

As soon as we became aware of this image due to being contacted by the plaintiff in 2023, we found eight other fraudulent articles posted around the same time. We immediately removed them all, updated our website security and hoped that would resolve the situation since in our estimation the image was clearly part of a data breach.

So, yes, I am agreeing that this image appeared on our website. But what I can say without hesitation is that no one on my staff posted the content. The dates make no logical sense, the topic does not fit our editorial scope, and we do not publish 3-line articles.

Our normal articles at relevantmagazine.com get between 500-20,000 views each. Looking at Google Analytics, this article/image was seen a total of seven times in the six years it was up. This, to me, is further proof that it was not content we posted.

If the article was seen a total of seven times, with three banner ads on the page (which generate $.02 per thousand views), the image would have generated less than a penny of revenue for our company.

We have published more than 20,000 articles in the last 22 years, and have never published a stolen image. We use royalty-free sites like unsplash.com and pixels.com for most of our features, do original designs, and for news articles we have a licensing subscription with shutterstock.com.

If we needed a real estate photo, we could acquire that kind of image legally through our shutterstock.com subscription — and would, if we published real estate content (which we don't). We're a Christian publication and would not steal photographs. We have a two-decade history of upright practices.

In summary, even though it is the logical explanation and the conclusion my staff arrived at when we became aware of this photo, I cannot prove that this content was posted on our website due to a hack. The image and article have been deleted, so we can no longer research its origin at this point.

But all logical evidence points to this post being similar to the posts that happened in 2017 when our website was indeed breached.

Despite this explanation, if I do lose this judgment, I ask that a fair compensation be considered. The lawsuit states that if we had properly licensed the image, the photographer would have charged us $3,000. The judgment against us is for $12,000 — for an image that generated less than a penny, and by all logical explanation was posted as the result of a security breach.

We're an independent faith-based digital media company with only four people on staff, and as has been widely reported in recent years, companies like ours are shutting down weekly because the ad-supported content business model has declined so significantly.

We simply don't have the extra revenue to hire legal representation to fight this, and I'm hoping that you'll see that the penalty is not commiserate with the error. Our mistake was having our website breached and not immediately knowing that happened, and allowing some problematic content to appear buried on our website for years.

But, those articles had essentially zero traffic, which is why we were unaware of their existence until notified by the plaintiff. Since then we have implemented stronger website security to prevent a breach like this from happening again. I'm asking that you please reconsider your judgment against us in this matter.

I'm available for further conversation if needed.

Respectfully,
Cameron Strang